UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS CHARLES RICHARDSON,

        Plaintiff,

v.                              Case No. 3:23-cv-891-BJD-MCR

RICKY DIXON, et al.,

        Defendants.

_____

## ORDER OF DISMISSAL WTHOUT PREJUDICE

Plaintiff, an inmate of the Florida penal system who is currently housed at Gulf Correctional Institution (GCI), initiated this action by filing a civil rights Complaint under 42 U.S.C. § 1983. Doc. 1. Plaintiff names six Defendants: (1) Secretary of the Florida Department of Corrections (FDOC) Ricky Dixon; (2) Union Correctional Institution (UCI) Food Service Director J. Clemons; (3) UCI Correctional Officer R. Brown; (4) UCI Chief Health Officer E.L. Toledo; (5) GCI Nurse Pamela Jansen; and (6) Centurion Health. *Id.* at 2-3.

Plaintiff complains about alleged events that occurred between May 14, 2020, and February 10, 2022. *Id.* at 4-6. According to Plaintiff, on May 14, 2020, while housed at UCI, Defendant Clemons was deliberately indifferent to the conditions of Plaintiff's confinement by forcing Plaintiff to work in an unsafe

environment. *Id.* at 4. Plaintiff alleges that Clemons knew that rainwater had formed in the cracks of the concrete flooring of the unloading ramp, but she still assigned Plaintiff to work as a "pusher and puller" to unload the food truck. *Id.* at 4. He asserts that while unloading the truck, he slipped and fell on the wet concrete, injuring the right side of his torso and ribcage. *Id.* After the fall, Plaintiff was escorted to medical and given Tylenol before his return to work. *Id.* He claims he soon asked to go back to his dorm because the right side of his body had become increasingly stiff. *Id.*

The next day, May 15, 2020, Plaintiff declared a medical emergency because "a cough [ ] caused [his] right side to lock up from extreme pain . . . ." *Id.* Medical officials then evaluated Plaintiff and diagnosed him with COVID-19. *Id.* at 4-5. After his diagnosis, Defendant Brown immediately placed Plaintiff in quarantine. *Id.* at 4-5. According to Plaintiff, he submitted several sick-call requests about his right-side injury while he was in confinement but his requests were "overlooked, denied[,] and ignored . . . ." *Id.* at 4-5. Plaintiff asserts that on June 9, 2020, Brown removed Plaintiff from quarantine, but when Plaintiff asked for medical help for his back injury, Brown unwarrantedly placed him on a 72-hour property restriction and issued two false disciplinary reports. *Id.* at 5. According to Plaintiff, Brown's actions amounted to deliberate indifference to the conditions of his confinement in violation of his rights under the Eighth Amendment. *Id.* at 9.

Plaintiff alleges he continued to file sick-call requests about his right-side injury and in August 2020, Defendant Toledo evaluated Plaintiff, took x-rays, and incorrectly diagnosed Plaintiff as having degenerative disc disease. *Id.* at 6. Toledo then treated Plaintiff by prescribing Ibuprofen, muscle rub, medical passes, a cane, steroid pills, and administered steroid shots. *Id.* Plaintiff, however, maintains Toledo's incorrect diagnosis of his injuries was under Defendant Centurion's customs, policies, and practices of overlooking the seriousness of Plaintiff's right-side injuries and to prevent Plaintiff from obtaining a medical referral for an outside specialist who could treat Plaintiff's slip-and-fall wounds. *Id.* To that end, Plaintiff claims Toledo and Centurion's actions and practices amounted to deliberate indifference to Plaintiff's serious medical needs.

Plaintiff contends he continued to file sick-call requests seeking treatment for his right-side injury and on August 16, 2021, unnamed officials transferred him to Regional Medical Center in retaliation for his medical requests. *Id.* According to Plaintiff, officials then transferred him to GCI on February 10, 2022, and upon his arrival, Defendant Jansen refused to renew Plaintiff's medical passes. *Id.* at 7. Plaintiff claims Jansen's actions at GCI amounted to deliberate indifference to his serious medical needs. *Id.* at 9.

As to Defendant Dixon, Plaintiff argues Dixon acted deliberately indifferent by "negligently" maintaining the loading dock at UCI, which caused

Plaintiff to fall and injure his right side, and "by negligently selecting Centurion Health and supervising Centurion's employees" who did not properly care for his slip-and-fall injury. *Id.* at 3. As relief, Plaintiff seeks injunctive and declaratory relief, as well as compensatory and punitive damages. *Id.* at 10-11.

## I.   Defendant Jansen

Plaintiff's factual allegations and claims against Defendant Jansen involve events that occurred at GCI, while Plaintiff's claims against the other five Defendants involve events that occurred at UCI. GCI is located within the Northern District of Florida, and UCI is located within this District. Plaintiff's claims involving Jansen's conduct at GCI do not overlap with Plaintiff's allegations against the remaining Defendants such that it would be appropriate to join Plaintiff's GCI/Jansen claims with the other claims in this action. Thus, Plaintiff's claims against Jansen are due to be dismissed without prejudice for improper venue. If Plaintiff wishes to pursue his claims against Defendant Jansen, he must refile those claims in the Northern District of Florida, which is the proper venue for those claims.

## II.   Defendants Dixon, Clemons, Brown, Toledo, and Centurion

As to the remaining Defendants, the Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may

4

be granted. *See* 28 U.S.C. § 1915(e)(2)(B). As for whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

In reviewing a pro se plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). But the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x

5

982, 982 (11th Cir. 2017)[1] (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Plaintiff's claims against Defendants Clemons, Brown, Toledo, Dixon, and Centurion are subject to dismissal under this Court's screening obligation because he fails to "state a claim to relief that is plausible on its face." See *Iqbal*, 556 U.S. at 678. To state a claim under § 1983, a plaintiff must allege "(1) both that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *See Bingham*, 654 F.3d at 1175 (alteration in original).

Plaintiff raises several Eighth Amendment claims related to the conditions of his confinement or lack of medical care. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and

---

[1] Although the Court does not rely on unpublished opinions as precedent, they may be cited in this Order because the Court finds their reasoning persuasive on a particular point. *See McNamara v. GEICO*, 30 F. 4th 1055, 1060-61 (11th Cir. 2022). Rule 32.1 of the Federal Rules of Appellate Procedure permits the Court to cite unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

6

subjective inquiry regarding a prison official's conduct." *Oliver v. Fuhrman*, 739 F. App'x 968, 969 (11th Cir. 2018) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. *Id.*[2] The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. *Id.* The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. *Id.*

*Oliver*, 739 F. App'x at 969-70. Next, "[t]o make out the subjective component of an Eighth Amendment deliberate-indifference claim, a plaintiff must establish that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis in original).

First, Plaintiff claims Defendant Clemons's decision to make Plaintiff unload the food truck on slippery, wet flooring subjected Plaintiff to unconstitutional conditions of confinement. But Plaintiff's factual allegations, read liberally and accepted as true, do not support an inference that Clemons has violated any constitutional or federal rights sufficient to maintain an action under § 1983. Rather, Plaintiff's allegations about the slippery concrete amount to no more than an assertion of general negligence for failing to

---

[2] *Chandler*, 379 F.3d at 1289.

maintain the premises in a reasonably safe condition. *See* Doc. 1 at 4. Allegations of mere negligence do not rise to the level of a constitutional violation under § 1983. *See Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("Accidents, mistakes, negligence, and medical malpractice are not constitutional violation[s] merely because the victim is a prisoner.") (internal quotation marks omitted; alteration in original); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that a prisoner did not state a claim under § 1983 where he alleged he slipped on a pillow a guard negligently left on a stairway). Indeed, "courts have held that slip-and-fall accidents in prison facilities do not violate the Eighth Amendment." *Williams v. Peters*, No. 220CV00680RDPHNJ, 2021 WL 6496553, at *4 (N.D. Ala. Dec. 22, 2021), *report and recommendation adopted*, 2022 WL 130740 (N.D. Ala. Jan. 13, 2022); *Winston v. Aducci-Washington*, No. 717CV01099VEHSGC, 2018 WL 2272940, at *6 (N.D. Ala. Apr. 19, 2018), *report and recommendation adopted*, 2018 WL 2266955 (N.D. Ala. May 17, 2018) (collecting cases finding the same); *see Brisbon v. Chatham Cnty.*, No. CV422-044, 2022 WL 1164647, at *1 (S.D. Ga. Apr. 19, 2022) ("Section 1983 simply cannot be used to bring a negligence-based tort suit in federal court, and even read most charitably, an allegation that some jail employee carelessly failed to address the leak in the shower area sounds in negligence rather than the criminal recklessness required to support a § 1983 claim."); *Perry v.*

8

*Chronister*, No. 8:20-CV-449-T-02AAS, 2020 WL 5094846, at *3 (M.D. Fla. Aug. 28, 2020) ("A slip and fall accident in jail or prison does not give rise to a federal constitutional claim."). Thus, Plaintiff fails to state a plausible claim against Defendant Clemons.

Plaintiff also fails to sufficiently allege Brown's actions subjected him to unconstitutional conditions of confinement. Plaintiff argues that Brown acted deliberately indifferent by moving Plaintiff to administrative confinement after he tested positive for COVID-19. Doc. 1 at 4. Plaintiff claims that while he was in quarantine/confinement, he tried to seek medical care for his right-side injury, but those requests "were overlooked, denied, or ignored." Doc. 1 at 4-5. But Plaintiff neither alleges Brown moved Plaintiff to quarantine or administrative confinement to obstruct Plaintiff's sick-call requests, nor does he state Brown knew those purported requests were being unanswered during that quarantine period. Indeed, Plaintiff does not assert his injuries deteriorated because Brown moved him to confinement or quarantine; and to that end, Plaintiff fails to allege his quarantine conditions were so extreme as to pose a serious risk to his health or safety. Thus, he fails to allege his confinement conditions violated the Eighth Amendment.

Plaintiff's allegations about Brown's imposition of a 72-hour property restriction are also not enough to maintain a deliberate indifference claim. Indeed, the Eleventh Circuit has held a prisoner who alleges he was placed on

9

72-hour strip status fails to state a claim under the Eighth Amendment. *See Woodson v. Whitehead*, 673 F. App'x 931, 932 (11th Cir. 2016) ("Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison condition[] that create[s] a substantial risk of serious harm."). *See also O'Connor v. Kelley*, 644 F. App'x 928, 932 (11th Cir. 2016) (holding that the prisoner did not state the conditions of his confinement were cruel and unusual when he was placed on strip status for weeks). Likewise, if Plaintiff tries to claim Brown's issuance of two false disciplinary reports or administrative confinement amounted to a due process violation, those allegations, accepted as true, similarly fail to state a plausible claim for relief. *See Woodson*, 673 F. App'x at 933 (recognizing "restrictive disciplinary confinement . . . is not the kind of change in condition that . . . imposes an atypical or significant hardship") (citing *Sandin v. Conner*, 515 U.S. 472, 482-86 (1995)). Notably, Plaintiff asserts no facts suggesting he faced conditions so severe that they imposed on him a significant hardship compared to the ordinary incidents of prison life. Nor does Plaintiff allege that any disciplinary charge affected the duration of his sentence. For example, he does not allege a loss of good time credits. *See Smith v. Deemer*, 641 F. App'x 865, 867, 868 (11th Cir. 2016) (holding that the district court properly dismissed plaintiff's due process claim because the disciplinary hearing did not cause a loss of good time

10

credits and plaintiff did not allege his term of disciplinary confinement exposed him to atypical and significant hardship even though the conditions in disciplinary confinement were more restrictive and less comfortable than those in general confinement). Thus, Plaintiff fails to state a plausible claim for relief against Defendant Brown.

Second, Plaintiff alleges Defendant Toledo acted deliberately indifferent to his serious medical needs. "To show that [Toldeo] acted with deliberate indifference to serious medical needs [under the Eighth Amendment], [Plaintiff] must [again] satisfy both an objective and a subjective inquiry." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). To establish the objective component, Plaintiff must allege facts showing he had a serious medical need. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). As to the subjective component, "[c]onduct that is more than [gross] negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all." *Baez v. Rogers*, 522 F. App'x 819, 821 (11th Cir. 2013) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir.1999)). Here, even assuming Plaintiff sufficiently alleged his injury was a serious medical need, Plaintiff fails to allege facts

establishing Toledo's conduct amounted to deliberate indifference. Indeed, taking Plaintiff's allegations as true, he asserts Toledo provided medical care for Plaintiff's right-side injury. Plaintiff asserts Toledo conducted x-rays and diagnosed Plaintiff's injuries as degenerative disc disease before treating him with Ibuprofen, muscle rub, steroid pills, and steroid shots, and prescribing medical passes and a cane. Doc. 1 at 6. Plaintiff disagrees with Toledo's degenerative disc disease diagnosis and argues, contrary to Toledo's medical belief, that his pain stems from his slip-and-fall injuries. But "[a] simple difference in medical opinion between the medical staff and an inmate as to the latter's diagnosis or course of treatment does not establish deliberate indifference." *Baez*, 522 F. App'x at 821 (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). Thus, Plaintiff fails to state a plausible claim for relief against Defendant Toledo.

Finally, Plaintiff claims Defendants Dixon and Centurion acted deliberately indifferent to Plaintiff's conditions of confinement and serious medical needs. Notably, Plaintiff tries to hold Dixon liable based on the theory of *respondeat superior*, but supervisory officials cannot be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Instead, a supervisor can be liable only when that supervisor "personally participates in

the alleged unconstitutional conduct or when there is a causal connection" between the supervisor's actions and the constitutional deprivation. *Id.* Because Plaintiff does not allege Dixon personally participated in any unconstitutional conduct, the viability of his supervisory claim depends on whether he plausibly alleges a causal connection between Dixon's actions and the alleged constitutional deprivation.

Plaintiff may show the requisite causal connection in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and failed to stop them from doing so." *Id.* (internal citations and quotation marks omitted).

Here, Plaintiff does not allege facts establishing a causal connection. For example, he does not allege a history of widespread abuse, nor does he allege that Dixon knew of a need to train his subordinates and failed to do so. Further, while Plaintiff makes a passing reference that his injuries stemmed from Dixon's "practices," he describes those "practices" as "negligently" hiring Centurion as FDOC's medical provider and "negligently" maintaining the loading dock at UCI. Doc. 1 at 3. But negligence does not rise to the level of a

13

constitutional violation, and thus Plaintiff has failed to state a claim against Defendant Dixon.

Likewise, private corporations like Centurion cannot be held liable under § 1983 based on supervisory liability without allegations identifying a policy or custom that was the moving force behind a constitutional violation. *See Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917 (11th Cir. 2017) (citing *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). While Plaintiff generally states Centurion implemented a policy to deny adequate medical treatment and employ doctors who will carry out that policy, his self-serving, conclusory statement amounts to no more than a "naked assertion," which fails to satisfy the pleading standard. *See Twombly*, 550 U.S. at 570; *Harvey*, 296 F. App'x at 826. Indeed, Plaintiff's allegations about an isolated occurrence involving only himself are not enough to sustain a claim that Centurion has a policy to deny inmates adequate medical care. Also, even if Plaintiff sufficiently alleged an adequate claim for deliberate indifference against a particular individual, Centurion cannot be held liable simply because it was under contract to provide health care to inmates at Plaintiff's correctional facility or simply because it hires medical staff under that contract. Thus, Plaintiff fails to state a claim against Defendant Centurion.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. Plaintiff's claims against Defendant Jansen are **DISMISSED without prejudice** to Plaintiff refiling those claims in the Northern District of Florida, which is the proper venue for those claims.

2. Plaintiff's claims against Defendants Dixon, Clemons, Brown, Toledo, and Centurion are **DISMISSED without prejudice**.

3. Plaintiff's motion to appoint counsel (Doc. 3) is **DENIED**.

4. The Clerk of Court shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of October, 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7

C:  Thomas Charles Richardson, #095833